IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

JACOB MOLINA,

        Plaintiff,

v.                                     Case No. 13-1025-JTM

AGENTS GREG PEREZ and
KARL TIMMONS, in their
individual capacities,

        Defendants.

## MEMORANDUM AND ORDER

Before the court are various motions in limine by both parties (Dkts. 80, 81, 82, 91). This action stems from the detention of plaintiff Jacob Molina on his property by defendants Gerg Perez and Karl Timmons. Plaintiff filed a *Bivens* action against defendants alleging Fourth Amendment violations for unreasonable seizure and excessive use of force. The matter is scheduled for trial on January 21, 2015. Both parties appeared before the court to argue these motions on January 14, 2015. The court addresses each motion in turn.

### I. Background

Plaintiff Jacob Molina is a pastor who lives with his wife on Barron Road in Wichita, Kansas. The couple also owns a home located at 2216 S. White Cliff Road in Wichita, where plaintiff's brother-in-law lives. The brother-in-law and plaintiff's father-in-law share the same name: Jose Florencio Flores-Euceda.

Defendant Perez has been employed by Immigration and Customs Enforcement ("ICE") and its predecessor agency, Immigration and Naturalization Service, since May 1997. He is currently a Deportation Officer (DO) under the ICE Office of Enforcement and Removal Operations (ERO). Defendant Timmons has been employed by ICE for approximately 19 years. He is currently employed as a DO with the ICE ERO Fugitive Operations Team in Wichita. Both defendants have training on the proper use of force by law enforcement officers.

On July 1, 2011, defendants received information about an individual named Jose Antonio Flores-Hernandez (the "target"), a citizen of Honduras with an outstanding warrant of removal that was issued in August 2005. Through a search of available databases, Timmons determined that a male with the target's name and date of birth possibly resided at 2216 S. White Cliff Road, Wichita, Kansas 67207.

Timmons conducted surveillance at the target address twice in August 2011. He performed registration checks on the license plates of vehicles parked at the White Cliff residence and discovered who owned the vehicles. One of the license plates was registered to plaintiff at 9130 E. Barron Road, Wichita, Kansas 67207. Timmons learned from a records check that plaintiff had been arrested by the Wichita Police Department for unlawful discharge of a firearm on August 11, 1992, but the misdemeanor complaint had been dismissed. Timmons also checked driver's license photographs to determine whether the target was using "Jacob Molina" as an alias. Plaintiff's photograph established that he was not the target.

On August 17, 2011, Perez and Timmons went to the White Cliff address to conduct additional surveillance, hoping to locate and apprehend the target. At approximately 6:30 a.m., Timmons observed a gray Honda registered to plaintiff in the driveway of the White Cliff residence, along with a new vehicle: a green Honda SUV. Timmons called for a registration check on the green Honda; it was registered to a "Jose Flores" living at 2216 S. White Cliff Lane, Wichita, Kansas 67207. Timmons believed the information connected the target to the White Cliff residence, as suspected.

Defendants then decided to approach the house to talk with the occupants. Neither officer was wearing an official law enforcement uniform. Timmons was wearing civilian attire with his badge on a neck chain displayed outside his shirt and body armor. Perez was wearing trousers and a blue polo shirt. He also wore a tan vest over his body armor, which displayed a "POLICE" patch and a patch depicting an ICE badge, and his badge on a neck chain outside his vest.

Between 7:45 and 7:50 a.m., Timmons knocked on the front door of the residence and rang the doorbell. Nobody answered the door. He knocked and rang the doorbell again but received no answer. Two dogs came to the window and barked. Timmons stayed near the front door, periodically knocking and ringing the doorbell. He believed the occupants might still be asleep or just awakened and could be getting dressed.

At approximately 7:55 a.m., plaintiff's brother-in-law, Jose Florencio Flores-Euceda, answered the door but did not introduce himself. He stayed inside with the storm door closed and talked to Timmons through the glass. Timmons introduced himself as an ICE agent. Jose asked Timmons what he was doing there. Timmons

3

looked at the target's photo and saw that the man who answered the door was not the target. Timmons said he was looking for Jose Flores, the man who drove the green SUV. Jose said that was his father. Timmons knew that the Jose Flores he was looking for was too young to be this man's father, so he asked the man in the doorway whether *he* was Jose Flores. The man said that he was not.

The dogs continued barking in the house. Timmons asked if he and Perez could come in and talk with the man, and if he would put the dogs away. The brother-in-law responded that he would go put the dogs away and he shut the door. Defendants waited about ten minutes before Timmons knocked and rang the doorbell again, but no one responded.

Unbeknownst to defendants, the brother-in-law had called plaintiff after shutting the door and told him two men were at the house. Plaintiff immediately drove to the house, arriving at approximately 8:05 a.m. When plaintiff got out of his car, Timmons recognized him from his driver's license photograph.

Timmons identified himself as an ICE agent and called out the name "Jacob Molina." Plaintiff acknowledged that this was his name. Perez also introduced himself as an ICE agent and asked whether plaintiff lived at the White Cliff residence. Plaintiff replied that it was his property, but did not say that he lived at the residence.

Plaintiff asked defendants why they were there, and they said that they were investigating. He asked them whether they had a warrant to search the property and defendants replied that they did not. Plaintiff suggested that, as the property owner, he

could tell them to leave if they did not have a warrant. Defendants did not have a warrant and ordered plaintiff to leave.

Plaintiff then took out his cell phone and called 9-1-1. He gave the dispatch operator the White Cliff address and said there were two individuals on his property. Before he could give any additional information, defendants approached plaintiff from behind, forced him to the ground and handcuffed him, leaving him face-down on the ground. As a result, plaintiff suffered a large welt and some bruising.

After helping plaintiff to a sitting position, Timmons called an assistant U.S. Attorney. They discussed whether defendants should obtain a search warrant. While Timmons was on the phone with the attorney, plaintiff's wife arrived. Timmons explained to plaintiff and his wife that the officers were looking for Jose Antonio Flores-Hernandez, and he showed a photograph of the suspect. Plaintiff and his wife stated that they did not know the suspect and that he did not live at the White Cliff residence. A short time later, an older Hispanic man approached the house on foot. Plaintiff's wife introduced the man as her father, Jose Florencio Flores-Euceda. This was not the Jose Flores the officers were looking for.

A pair of Wichita Police Department officers arrived at 8:27 a.m., summoned by plaintiff's 9-1-1 call. Plaintiff was released from the handcuffs. He then wrote down defendants' names so he could file a complaint with their ICE supervisor. Plaintiff filed this *Bivens* action against Timmons and Perez, asserting Fourth Amendment violations for unreasonable seizure and excessive force.

## II. Legal Standard

The motion in limine provides a trial court the opportunity "to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial." *United States v. Cline*, 188 F. Supp. 2d 1287, 1291 (D. Kan. 2002) (quoting *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996)). The power to make evidentiary rulings in limine is not expressly provided by statute or rule; it stems from the court's authority to administer and try cases. *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984); *see* FED. R. EVID. 103(d), 104(c), 402, 403, 611(a). Such rulings may increase judicial efficiency, but many evidentiary rulings "should be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in the proper context." *Mendelsohn v. Sprint/United Mgmt. Co.*, 587 F. Supp. 2d 1201, 1208 (D. Kan. 2008) (citing *Sperberg v. Goodyear Tire & Rubber Co.*, 519 F.2d 708, 712 (6th Cir. 1975)). An in limine evidentiary ruling is subject to change at the court's discretion "when the case unfolds" in trial. *Luce*, 469 U.S. at 41-42.

## III. Analysis

### A. Defendants' Right to Raise Qualified Immunity Again at Trial (Dkt. 80)

Defendants were twice denied summary judgment on a qualified immunity defense. (Dkts. 43, 70). They identify their right to raise the qualified immunity defense at trial despite the court's denial thereof on summary judgment. "A qualified immunity defense, of course, does not vanish when a district court declines to rule on the plea summarily. The plea remains available to the defending officials at trial . . . ." *Oritz v.*

*Jordan*, 131 S. Ct. 884, 888-89 (2011) (where district court denied summary judgment on qualified immunity). Thus, defendants may raise the defense again at trial.

**B. Defendants' Motions to Exclude Evidence (Dkt. 80)**

    **1. Motion to Exclude Prior Disciplinary Actions Against Agent Timmons**

    During discovery, defendant Timmons disclosed two separate instances of prior workplace disciplinary actions taken against him. The first, an incident between Timmons and another ICE employee, was characterized as "Disrespectful Conduct to Others." The second, stemming from an argument between Timmons and a deputy sheriff in a restaurant, was characterized as "Conduct Unbecoming" and "Failure to Follow Policy." The second incident also involved the misuse of an agency computer database for a personal investigation. Timmons argues that these instances should be excluded as irrelevant, or, alternatively, under Federal Rule of Evidence 403. Plaintiff argues that the discipline related to Timmons's personal use of a government database is admissible for impeachment purposes because it speaks to his truthfulness or untruthfulness.

    Evidence that has any tendency to make a fact of consequence more or less probable is relevant. FED. R. EVID. 401. Irrelevant evidence is not admissible. FED. R. EVID. 402. Extrinsic evidence of specific instances of conduct "is not admissible to attack or support [a] witness's character for truthfulness." FED. R. EVID. 608(b). Such instances may be inquired into on cross-examination if "they are probative of the character for truthfulness" of the witness or another witness. *Id.*

The misuse of a government database for personal investigation, which resulted in two weeks of discipline, does not tend to make any fact of consequence in this matter more or less probable and is therefore irrelevant. Nor does it bear on Agent Timmons's character for untruthfulness. It may reflect his decision to break a rule, or other similar matters of personal judgment, but it is not an inherently dishonest act. Further, Agent Timmons did not attempt to conceal his transgression. This evidence is inadmissible for impeachment or any other purpose.

The motion is GRANTED.

**2. Motion to Exclude the Possibility of Indemnification or Insurance**

Defendants move the court to prohibit any suggestion that the Department of Homeland Security or ICE may indemnify defendants for any damages awarded in this matter.

"Evidence that a person was or was not insured against liability is not admissible to prove whether the person acted negligently or otherwise wrongfully." FED. R. EVID. 411. Such evidence may be used only for other purposes, such as proving bias, agency, or ownership. *Id.* Indemnity is treated the same as insurance under Rule 411. *Perrin v. Anderson*, 784 F.2d 1040, 1047-48 (10th Cir. 1986). Such evidence is therefore inadmissible to prove defendants' liability in this case.

The court also finds it inappropriate to present testimony of indemnification by a federal agency in a *Bivens* action for the following reasons. Evidence of indemnity may be relevant for a determination of punitive damages because a jury must know what impact a punitive award will have on a defendant. *Id.* Punitive damages are available in

a *Bivens* action. *Smith v. United States*, 561 F.3d 1090, 1102 (10th Cir. 2009). Further, federal agencies do, in certain circumstances, indemnify their agents in *Bivens* actions. *See F.D.I.C. v. Meyer*, 510 U.S. 471, 486 (1994); INDEMNIFICATION OF EMPLOYEES ACTING IN AN OFFICIAL CAPACITY, DEPT. HOMELAND SEC. MGMT. DIRECTIVE SYS., MD Number 0415, (2005). Thus, because it is proper to inform the jury of the impact punitive damages will have on the paying entity, it may seem proper to inform the jury of whether defendants will be indemnified or will remain personally liable.

However, the purpose of a *Bivens* action is to provide monetary recovery and deterrence against a federal official in his individual capacity. A government agency cannot be sued in a *Bivens* action. *See Meyer*, 510 U.S. at 485-86. The purpose of a *Bivens* action is to deter the officer, not the agency. *Id.* Thus, it is inappropriate for a jury to consider punitive damages, and thus the quantity of damages necessary to suffice as a deterrent, against a federal agency where it is not the purpose of the action to deter the agency. For this reason, the court finds that the jury should not be informed of whether defendants may or may not receive indemnity – only that this action is against defendants in their individual capacities and not their agency.

Accordingly, the motion is GRANTED.

### 3. Motion to Exclude The Abstract Value of Constitutional Rights

Defendants seek to exclude any argument that plaintiff can obtain damages based on an abstract value of constitutional rights, rather than on actual injuries.

"The deprivation of constitutional rights, standing alone, does not entitle a plaintiff to general damages." *Lippoldt v. Cole*, 468 F.3d 1204, 1220 (10th Cir. 2006)

(quotation and citation omitted) (affirming denial of compensatory damages and award of nominal damages where constitutional right was violated but plaintiff proved no actual injury). A plaintiff must demonstrate actual, compensable injury to recover compensatory damages for constitutional violations. *Id.*; *see also Memphis Cnty. Sch. Dist. v. Stachura*, 477 U.S. 299, 307-08 (1986).

Here, plaintiff's counsel must make no mention of a compensatory damages award based on the mere deprivation of a constitutional right in the absence of actual, compensable damages.

The motion is GRANTED.

## 4. Motion to Exclude Plaintiff's Position as a Volunteer Pastor

Defendants argue that plaintiff's position as a pastor is irrelevant to this action. Plaintiff argues that the evidence is relevant because the incident had a pronounced traumatic effect on him due to his position as a pastor. Although injury to reputation is not recoverable in a *Bivens* action, *Siegert v. Gilley*, 500 U.S. 226, 234 (1991), the court finds no case law that disallows recovery of emotional non-economic damages in a Fourth Amendment *Bivens* action. Therefore, the evidence may be relevant to a damages determination. Further, plaintiff's position as a pastor bears on the jury's understanding of who he is – no different than any other occupation or voluntary position.

The motion is DENIED.

**C. Plaintiff's Motion to Modify Pretrial Order (Dkt. 81)**

Plaintiff moves to modify the pretrial order as to damages claimed, reducing the compensatory damages from $100,000 to $25,000 and reducing the punitive damages from $100,000 to $25,000.

A district court's decision to modify a pretrial order is reviewed for abuse of discretion. *Joseph Mfg. Co., Inc. v. Olympic Fire Corp.*, 986 F.2d 416, 418 (10th Cir. 1993). A final pretrial order may be modified "only to prevent manifest injustice." FED. R. CIV. P. 16(e). "The party moving to amend the order bears the burden to prove the manifest injustice that would otherwise occur." *Davey v. Lockheed Martin Corp.*, 301 F.3d 1204, 1208 (10th Cir. 2002).

Here, defendants oppose the modification because they wish to attack the larger damages sought as grossly disproportionate to plaintiff's actual injuries, thus framing the action as unreasonable. Plaintiff seeks to modify the damages to an amount he considers appropriate. It would be unjust to deny plaintiff's attempt to seek an appropriate amount of damages so that defendants can employ the aforementioned trial strategy.

The pretrial order will be modified to reflect claims of $25,000 in compensatory damages and $25,000 in punitive damages. Further, if defendants wish to raise the issue of the original damages claim, plaintiff will be allowed to inform the jury that the government opposed his effort to reduce the damages claim.

The motion is GRANTED.

**D. Plaintiff's Motions in Limine to Exclude Evidence (Dkt. 82)**

**1. Motion to Exclude Any Evidence of Plaintiff's 1992 Arrest**

Plaintiff moves the court to exclude any evidence of his 1992 arrest for unlawful discharge of a firearm. He argues that the evidence is irrelevant and is otherwise inadmissible character evidence.

The arrest is extremely remote in time from the incident at issue in this trial. Thus, whatever relevance the evidence may have on the objective analysis of defendants' conduct during the event in question, its probative value is substantially outweighed by the risk of undue prejudice against plaintiff. FED. R. EVID. 403. The evidence is inadmissible for substantive purposes. Defendants likewise may not present evidence that plaintiff ever owned a firearm or possessed knowledge of firearms in general.

The evidence is also inadmissible for the purpose of impeachment, should plaintiff testify. Extrinsic evidence of specific instances of conduct "is not admissible to attack or support [a] witness's character for truthfulness." FED. R. EVID. 608(b). Although the court may allow such instances to be inquired into on cross-examination, it may only do so if they bear on the witness's character for truthfulness. The discharge of a firearm does not bear on plaintiff's character for truthfulness. Further, an arrest is the act of an officer, not the arrestee, and cannot be used under Rule 608(b). Therefore, the evidence is excluded for any purpose.

The motion is GRANTED.

## 2. Any Evidence Concerning the Legal Status of Other Persons

Plaintiff seeks exclusion of any evidence concerning the legal status of any of his relatives, friends, or acquaintances and any evidence concerning whether he ever sponsored, aided, or assisted anyone in obtaining legal status in the United States. He asserts that all such evidence is irrelevant. Defendants plan to use such evidence to demonstrate plaintiff's credibility, state of mind, knowledge, intent, plan, motives, beliefs, and conduct. They intend to show that plaintiff was belligerent, aggressive, uncooperative, and determined to distract them from communicating with the man who answered the door.

Evidence that has any tendency to make a fact of consequence more or less probable is relevant. FED. R. EVID. 401. Evidence of crimes, wrongs, or other acts may be admissible for non-character evidence purposes, "such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." FED. R. EVID. 404(b)(2).

Here, defendants confirm that they learned of the illegal status of three residents of White Cliff, including Mrs. Molina's immediate family members, after the incident. Such evidence is irrelevant to the substantive issues of this case because it has no bearing on defendants' objective reasonable suspicion or use of force. Similarly, an attempt to use the evidence as "other acts" to prove plaintiff's motive, knowledge, or otherwise does not bear on the objective analysis of what defendants observed and responded to during the incident. Defendants similarly argue that the illegal status of the three residents is relevant to Jose Flores Florencio Euceda's credibility, state of mind,

knowledge, and motives. The evidence is likewise irrelevant for this purpose. Defendants argue that the fact that Jose Flores Florencio Euceda was born in Honduras is relevant because defendants' target was also born in Honduras. Euceda's place of birth may well be relevant to an objective analysis of their reasonable suspicion, but his immigration status is not.

Further, extrinsic evidence of specific instances of conduct "is not admissible to attack or support [a] witness's character for truthfulness." FED. R. EVID. 608(b). Such instances may be inquired into on cross-examination if "they are probative of the character for truthfulness" of the witness or another witness. *Id.* Evidence of specific conduct related to immigration status bearing on untruthfulness, but not merely the status itself, may be inquired into on cross-examination under Rule 608(b). *United States v. Thiongo*, 344 F.3d 55, 60 (1st Cir. 2003) (finding evidence of a sham marriage to evade immigration laws probative of untruthfulness); *Bonilla v. Jaronczyk*, 354 F. App'x 579, 583 (2d Cir. 2009) (unreported) (use of false papers to reenter United States admissible on cross-examination to prove untruthfulness).

Defendants intend to attack Mrs. Molina's credibility with evidence that she made false statements under oath on immigration forms or applications. Although the court may allow inquiry into these matters on cross-examination, it will not do so because of the high risk of undue prejudice to plaintiff. Further, it may be an attempt to back-door otherwise excluded immigration status evidence. The evidence is excluded.

The motion is GRANTED.

### 3. Evidence Concerning Defendant Perez's Box Cutter Experience

Plaintiff moves to exclude evidence that Perez was assaulted with a box cutter five months prior to the incident at issue in this case. Plaintiff argues that such evidence is irrelevant to the objective analyses required in this case.

Plaintiff's unreasonable seizure claim requires an objective analysis of whether defendants acted on "reasonable suspicion supported by articulable facts that criminal activity may be afoot." *Cortez v. McCauley*, 478 F.3d 1108, 1115 (10th Cir. 2007). Evidence of Perez's personal experience does not make any fact of consequence in this analysis more or less probable. The analysis here turns on whether defendants' observations at the time of the incident objectively justified the seizure. Whether a defendant was particularly wary due to past experiences does not factor into the analysis and is irrelevant.

Plaintiff's excessive force claim requires an objective analysis of whether the force used was reasonably necessary to effect a lawful arrest under the circumstances, from the perspective of a reasonable officer. *Plumhoff v. Packard*, 134 S. Ct. 2012, 2020 (2014); *Cortez*, 478 F.3d 1126. Therefore, subjective evidence of Agent Perez's experiences is likewise irrelevant to the excessive force analysis. The evidence is irrelevant to this inquiry as a whole and is inadmissible.

At the hearing, the parties also raised the issue of a newspaper article that commends Agent Perez for his work in immigration and his fair treatment of illegal aliens. This evidence is similarly irrelevant to the inquiry at hand. Any attempt to use

the newspaper article to rehabilitate Agent Perez as a witness should be discussed with the court prior to use.

The motion is GRANTED.

**4. The Report, Findings, and Testimony of Agent Mike Holliday**

Plaintiff seeks to exclude the report of Special Agent Mike Holliday, DHS Office of the Inspector General, regarding the incident pursuant to plaintiff's administrative complaint filed with DHS. The report found a lack of evidence supporting plaintiff's claim, eyewitnesses who contradicted plaintiff, and a lack of candor from plaintiff. Plaintiff argues that the report is inadmissible hearsay. Plaintiff also argues that the fact that defendants were cleared of wrongdoing by the internal investigation is inadmissible. Plaintiff finally argues that Agent Holliday should not be allowed to testify because his testimony would present numerous hearsay issues and would likely only elicit his own opinions on the ultimate issues of the case, or to attack plaintiff's truthfulness.

Defendants argue that the evidence is admissible as a record or statement of a public office. "A record or statement of a public office" is admissible as an exception to the rule against hearsay if "(A) it sets out: . . . in a civil case . . . factual findings from a legally authorized investigation; and (B) neither the source of information nor other circumstances indicate a lack of trustworthiness." FED. R. EVID. 803(8). Portions of investigatory reports based on factual investigations are admissible under Rule 803(8), even if they state a conclusion or opinion. *Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 169-70 (1988) (finding admissible a JAG Report published pursuant to the investigation

16

of a U.S. Navy aircraft crash). Such reports are admissible even to the extent that they contain opinions in the factual findings. *Id.* at 169.

Although the report and testimony of Special Agent Holliday may be admissible under Rule 803(8) and *Beech Aircraft Corp.*, the evidence is excluded here under Rule 403. The court does not wish the jury to hear the narrative in this case from the agency's investigatory perspective when it will be sufficiently provided by witnesses to the incident. The conclusion that defendants were cleared of wrongdoing addresses the same question we now ask a jury to decide in a different context. Admitting the report's conclusion risks suggesting to the jury that it should reach the same conclusion. Here, the jury will be capable of forming informed factual conclusions given the anticipated testimony. The report and testimony of Agent Holliday is excluded.

The motion is GRANTED.

### 5. Motion to Exclude the Testimony of Sandrine Lisk

Plaintiff moves to exclude the testimony of Mrs. Molina's former employer, immigration attorney Sandrine Lisk. Ms. Lisk spoke with a defendant on the phone during the incident. The conversation is recorded in part on plaintiff's 9-1-1 phone call. Plaintiff argues that her testimony will present hearsay issues. Ms. Lisk may have relevant testimony to offer from personal knowledge. The nature of her testimony, if any, is unclear at this point. Accordingly, the court defers its ruling on her testimony until trial.

The motion is DENIED.

**6. Motion to Exclude the Testimony of AUSA Brent Anderson**

Defendants do not plan to call Mr. Anderson to testify at this time. The motion is therefore moot. Any ruling will be deferred to such time as defendants call Mr. Anderson to testify.

The motion is DENIED.

**7. Motion to Exclude Any Testimony That a Warrant of Removal Authorizes Agents to Enter a Home**

Plaintiff is concerned that a jury may misconstrue a warrant of removal as granting defendants authority to enter and remain in a home. Defendants do not intend to testify that a warrant of removal allows agents to enter a home. However, they do plan to show that they had a warrant of removal to take Jose Antonio Flores-Hernandez into custody and remove him. Such testimony brings considerable risk of confusing the jury due to the differing nature of arrest and removal/deportation warrants. Accordingly, to avoid confusion of the jury, testimony regarding the warrant of removal should be accompanied by explanation of the difference between such warrant and a search or arrest warrant. The court may instruct the jury on this issue. Defendants must not imply that the warrant of removal is the same as an arrest or search warrant.

The motion is GRANTED.

**8. Motion to Exclude Testimony That Defendants Did Not Need a Warrant or Landlord Consent**

Plaintiff seeks exclusion of testimony that defendants did not need a warrant to remain on plaintiff's property after Jose Florencio Flores-Euceda shut the front door.

18

Plaintiff does not make an unreasonable search claim. Whether defendants needed a warrant to remain on plaintiff's property does not tend to make any fact of consequence to the unreasonable seizure or excessive force claim more or less likely because justified presence on the property does not contribute to justification of the arrest or force used. The only relevant aspect of this sub-issue is whether plaintiff asked for a warrant, because that is a fact pertinent to the nature of the interaction between defendants and plaintiff that may lead them to believe crime is afoot. However, to avoid the substantial risk of confusing the jury, the evidence is excluded.

The motion is GRANTED.

**9. Motion to Exclude the Testimony of Officers Clifton and Halverson**

Officers Clifton and Halverson are Wichita Police Department officers who responded to the scene of the incident at issue. Plaintiff argues that the officers "have no information concerning the actual incident that is the basis for plaintiff's claim because they arrived after the fact." (Dkt. 82, at 16). Plaintiff moves the court to limit their testimony to personal observations and not to entail any information relayed to them by defendants.

Defendants intend to call Officer Halverson to testify as to anything he saw or heard that would evidence plaintiff's alleged injuries. Testimony as to what he saw is admissible as a witness with personal knowledge. FED. R. EVID. 602. Things he may have heard from persons will be limited to hearsay exceptions. Defendants intend to offer Officer Halverson's testimony as to what defendant Perez said to him, arguing that it qualifies as a hearsay exception under Rule 803(1).

Out of court statements are not excluded by the rule against hearsay when the declarant makes "[a] statement describing or explaining an event or condition, made while or immediately after the declarant perceives it." FED. R. EVID. 803(1). Here, Officer Halverson arrived on the scene several minutes after the incident occurred. Thus, whatever defendant Perez said to him was not said "while or *immediately* after" Perez perceived it. *Id.* (emphasis added). Perez had time to consider the event before communicating it to Halverson. Perez's statements to Officer Halverson about the incident are inadmissible hearsay.

Plaintiff's motion is GRANTED to the extent that Officers Clifton and Halverson may not testify as to what defendant Perez told them about the incident upon their arrival.

### 10. Motion to Exclude Plaintiff's Journal Entries [GRANTED IN PART]

Plaintiff moves to exclude any entries in his personal journal other than the one concerning this incident. Defendants agree that no other pages will be offered aside from the very first page, dated 8/6/11 and identifying plaintiff as the author, and the entry relevant to this incident, dated 8/21/11.

The motion is GRANTED to the extent that the only pages admitted will be those dated 8/6/11 and 8/21/11.

### 11. Motion to Exclude Any Reference to Prior Damages Claims

The court granted plaintiff's motion to amend the pretrial order to reduce damages claims to $25,000 in compensatory and $25,000 in punitive damages. He moves the court to exclude any mention of prior demands for damages.

The court will allow defendants to discuss prior damages claims. However, should defendants do so, plaintiff will be allowed to inform the jury that defendants opposed his motion to reduce damages.

The motion is DENIED.

**E. Plaintiff's Supplemental Motion in Limine (Dkt. 91)**

Plaintiff moves the court to exclude the testimony of his neighbor, Virginia Lindahl, regarding her thoughts and observations about plaintiff's property. Ms. Lindahl was interviewed during the DHS investigation of the incident and noted that she knew all cars coming and going in the neighborhood except those at plaintiff's residence, and that his property was a constant source of problems in the neighborhood. Plaintiff notes that such testimony was not known to defendants at the time of the incident and thus had no bearing on their evaluation of reasonable suspicion, probable cause, or use of force. The court agrees.

Ms. Lindahl's opinion testimony regarding plaintiff's property is irrelevant to this action and is excluded. This order does not preclude any other relevant or admissible testimony Ms. Lindahl may offer, such as impeachment of another witness.

The motion is GRANTED.

IT IS ACCORDINGLY ORDERED this 20th day of January, 2015, that defendants' motion in limine (Dkt. 80) is GRANTED in part and DENIED in part, as described in this order.

IT IS FURTHER ORDERED that plaintiff's motions (Dkts. 81, 91) are GRANTED, and his motion to exclude evidence (Dkt. 82) is GRANTED in part and DENIED in part as described in this order.

s\ <u>J. Thomas Marten</u>
J. THOMAS MARTEN, JUDGE
